UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAAD ALJOHER,<br><br>           Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | Case No.   2:19-cv-01247-JDP (SS)<br><br>ORDER GRANTING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF No. 16<br><br>ORDER DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>ECF No. 17 |

Aljoher ("claimant") challenges the final decision of the Commissioner of Social Security denying his application for Title II disability benefits. ECF No. 1. The case is submitted on claimant's motion for summary judgment, ECF No. 16, to which the Commissioner filed an opposition and cross-motion for summary judgment, ECF No. 17. The matter is ripe for review, and this court now grants claimant's motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands for further consideration.[1]

**I.   STANDARD OF REVIEW**

On appeal, I ask whether substantial evidence supports the factual findings of the administrative law judge ("ALJ") and whether the ALJ applied the correct legal standards. *See*

---

[1] Both parties have consented to magistrate judge jurisdiction. ECF Nos. 8, 9.

1

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 42 U.S.C. § 405(g).  I review only the reasons provided by the ALJ in the disability determination and will not affirm based on a ground upon which the ALJ did not rely.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he ALJ's findings . . . must be supported by specific, cogent reasons.").  As part of my review, I consider whether the ALJ followed regulatory guidelines and considered the appropriate factors when weighing medical opinion evidence.[2]  *See* 20 C.F.R. §§ 404.1527, 416.927.

A motion for summary judgment will be granted only when the there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The burden of establishing that there is no genuine issue of material fact lies with the moving party.  *See Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  Once the moving party has met that burden by "presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, [Fed. R. Civ. P. 56(e)(2)] shifts to [the nonmoving party] the burden of presenting specific facts showing that such contradiction is possible."  *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978); *see also Nissan*, 210 F.3d at 1102-03.

**II.     BACKGROUND**

Claimant applied for Title II disability insurance benefits on March 20, 2015, alleging disability since February 1, 2014.  AR 188-94; *see* 42 U.S.C. §§ 416, 423.  In his disability report, he wrote that he experienced depression and hypertension.  AR 218, 221.  For his depression, claimant said that he was being treated with various antidepressants.  AR 276, 442-45, 501.  Claimant was later prescribed an antipsychotic medication.  AR 322, 501.

Claimant attended medical school in Iraq, where he worked as a doctor under Saddam Hussein's regime.  AR 46-47.  During that time, he worked in a prison and frequently had to attend executions, following which he was required to examine corpses and sign death

---

[2] Since claimant filed for disability prior to March 27, 2017, the Social Security Administration's revised rules regarding the evaluation of medical opinion evidence do not apply.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.

certificates. AR 56. As a result of this work, he began to experience depression, trouble sleeping, and nightmares. AR 56-57. After immigrating to the United States in 2000, he attended school for two additional years, then began working as a respiratory therapist.[3] AR 47, 464. He lost his respiratory therapy license in 2013 following two misdemeanor convictions. AR 49.

Claimant's application was denied both initially and upon reconsideration. AR 60-85, 219-34. He then requested a hearing before an ALJ. AR 98-99. At the hearing on January 31, 2018, claimant testified and was represented by an attorney. AR 42-59. On July 9, 2018, the ALJ issued a decision finding that claimant retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy and so was not disabled. AR 15-31. Claimant requested a review of the ALJ's decision, AR 184-87, and the Appeals Council denied his request, AR 1-6. He now seeks judicial review under 42 U.S.C. § 405(g).

I need only consider claimant's mental health impairments.[4] On that front, the administrative file includes records for the relevant time period from several healthcare providers: (1) Andres Sciolla, Psy.D., treating psychiatrist, AR 432-46, 756; (2) Sanh Nguyen, D.O., treating physician,[5] AR 775; (3) Stephen Newman, M.D., treating physician, AR 352-408, 416-19; (4) Terralyn Renfro, Psy.D., examining state agency consultative psychiatrist, AR 448-53; (5) F. Mateus, M.D., non-examining state agency physician, AR 66-69; (6) Joseph Schnitzler, D.O., non-examining state agency physician, AR 78-82, 756; and (7) George Bell, M.D., post-hearing non-examining physician, AR 760-68. Additionally, claimant's wife submitted a third-party adult function report. AR 249-56, 283-90.

### III.   ANALYSIS

An ALJ determines eligibility for Social Security benefits in a five-step sequential

---

[3] Claimant reported immigrating to the United States for a "political reason" and "to save [his] life." AR 464. He wrote that he was imprisoned in Iraq "for political reasons but not for too long." AR 465.

[4] Since his mental health conditions provide a sufficient basis to rule on claimant's appeal, I do not reach claimant's hypertension and related physical symptoms.

[5] Dr. Sciolla and Dr. Nguyen are both doctors at Turning Point Community Programs, where claimant received ongoing treatment. Treatment notes from staff at the center were also submitted in support of his treating doctors' conclusions. *See* AR 458-509.

evaluation process, asking: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments listed in the regulations; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018); 20 C.F.R. § 416.920. The burden of proof is on the claimant during the first four steps of the inquiry but shifts to the Commissioner at the fifth step. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f)*; Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At step one, the ALJ found that claimant had not engaged in substantial gainful activity since February 1, 2014, the alleged onset date. AR 17. At step two, the ALJ found that claimant had the severe impairments of depressive disorder and post-traumatic stress disorder ("PTSD"). AR 17-18. At step three, the ALJ found that claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in the regulations. AR 19. Before proceeding to step four, the ALJ found that claimant's RFC enabled him to perform "a full range of work at all exertional levels but with the following nonexertional limitations: he can have occasional non-interactive public contact." AR 21. At step four, the ALJ found that claimant could not perform past relevant work. AR 29. At step five, the ALJ found that considering claimant's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that he can perform. AR 30. Therefore, the ALJ determined that claimant was not disabled. AR 31.

### A. Medical Opinion Analysis

The weight given to medical opinions depends in part on whether the opinions come from treating, examining, or non-examining professionals. *See Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to become acquainted with and observe the patient. *See id.*; 20 C.F.R. § 416.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your

4

medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). An ALJ may reject an uncontradicted opinion of a treating medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. The opinion of a non-examining professional, without other evidence, is an insufficient basis for rejecting the opinion of a treating or examining professional. *See id.* at 831. For all medical opinions, an ALJ is required to consider the factors laid out in 20 C.F.R. § 404.1527(c). The required factors include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the extent to which the opinion is supported by evidence, the consistency of the opinion with the record as a whole, and whether the medical source is a specialist. 20 C.F.R. § 404.1527(c).

In evaluating the medical opinions in this case, the ALJ assigned greater weight to non-examining than to treating sources. The ALJ gave "little weight" to the opinions of claimant's treating doctors, Dr. Sciolla and Dr. Nguyen, which were deemed "not consistent with the record." AR 27-28. The ALJ gave "partial weight" to the opinions of Dr. Renfro and Dr. Bell, deeming them "somewhat consistent with the record." AR 25-26. Even though Dr. Schnitzler's opinion "provided greater limitations" than the ALJ included in the RFC, the ALJ assigned "great weight" to it, stating that it "does support that the claimant could occasionally have non-interactive contact with the public." AR 25. The ALJ also assigned "great weight" to Dr. Mateus, who opined that claimant experienced the least significant limitations. AR 25.

### a. Rejecting Treating Source Medical Opinion

Claimant argues that the ALJ erred by giving "little weight" to the opinions of claimant's treating doctors, both of whom described more severe limitations than those found by the ALJ. *See* ECF No. 16 at 14-15. "When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(ii). Even when a treating source's opinion is contradicted, the ALJ still must offer specific and legitimate reasons, supported by substantial evidence, for weighting non-treating source opinions more heavily. *See Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). To properly reject treating source opinions, "[t]he ALJ must do more than offer his conclusions[; h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *see Reddick*, 175 F.3d at 724 ("This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings . . . The ALJ must do more than offer his conclusion.").

Both of claimant's treating doctors opined that claimant had extreme limitations in three areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting or maintaining pace. *See* AR 756, 775. In addition to their opinions regarding the severity of claimant's limitations, the ALJ received the treating doctors' notes. Overall, the treatment records reflect that claimant received ongoing treatment with little improvement or stabilization. *See* AR 458-509. On January 27, 2015, although claimant had been on an SSRI for one month, he was still experiencing "significant depression" and had "a hard time motivating himself." AR 354, 418. On March 10, 2015, claimant was "still quite depressed . . . [and was] not sure if the SSRI or [bupropion had] been helpful," and claimant reported "suicidal thoughts." AR 352, 416. On March 12, 2015, claimant reported that he was "up all night" and slept only during the day, that he only ate "because of his wife," that he had "fatigue [and] poor concentration." AR 460. On May 7, 2015, Dr. Sciolla conducted an assessment, during which claimant stated that his primary concern was that he had "been thinking about killing [himself] . . . that's the major problem . . . thinking about it all the time." AR 432. Dr. Sciolla noted that claimant's trauma stemmed particularly from "war-related" incidents, in addition to the abuse he witnessed as a child and his brother's wartime death. AR 432. During the intake, Dr. Sciolla noted that claimant's grooming was "fair," his dress was "disheveled," he exhibited "blunted" affect, and his mood appeared anxious and depressed. AR 434. Among the symptoms that Dr. Sciolla attributed to claimant's major depressive disorder were "difficulty sleeping, anhedonia, guilt, low energy, decreased concentration and attention, and daily suicidal ideation." AR 436. As a result of claimant's PTSD, he was experiencing "night terrors, detachment from other [sic] and difficulty sleeping."

AR 436. Claimant reported "poor [response], no improvement" to medications. AR 436. Despite no concrete plans, claimant reported daily thoughts about "jumping off a cliff at Yosemite National Park to make it look like an accident." AR 436. Additionally, multiple of his cousins were diagnosed with schizophrenia, and claimant reported hearing a voice and sometimes "having a conversation with the voice." AR 461, 500. Claimant's antidepressant dosage was increased to the maximum daily dosage. *See* AR 442-45, 450. His antipsychotic medication dosage was also increased in order to "target his perceptual disturbances." AR 501.

The ALJ assigned "[l]ittle weight" to both treating source medical opinions, deeming them "not consistent with the record." AR 27-28. However, the ALJ did not sufficiently explain the ways in which these opinions were inconsistent with the record or offer any reasoning for why the nontreating source opinions were more consistent. In his discussion of all medical opinions, the ALJ repeated the same set of facts without relating those facts to any particular portions of the opinions or providing his interpretation of them. *See* AR 19-29. Within these repeating paragraphs, the only variations came in the brief description of each doctor's conclusions and the last sentence assigning weight to the opinions. *See* AR 19-29. In these repeating paragraphs, the ALJ did not describe how the selected facts were inconsistent with the treating source opinions.[6] As such, the ALJ did not offer "specific, cogent reasons" for preferring his own interpretation of the recited facts over the interpretation of treating sources. *See Reddick*, 157 F.3d at 722. By asserting without sufficient explanation that the treating physicians' medical opinions were less

---

[6] The facts as summarized by the ALJ are either inaccurate or do not contradict the opinions of Dr. Sciolla and Dr. Nguyen. The ALJ asserted that claimant "has never been fired or laid off from a job due to problems getting along with other people," but claimant lost his professional license due to an interpersonal confrontation. *See* AR 27, 49. The ALJ stated that "there is no evidence of suicidal intent, planning, or attempts," despite the numerous records and assessments documenting claimant's: plans to kill himself and make it look like an accident; daily thoughts of killing himself and acquiring the means to do so, by pills or hanging; and "past passive attempts at suicide." *See* AR 27, 346, 504. The ALJ stated that "[t]here are no periods of decompensation," despite records documenting claimant's worsening condition even after treatment. *See, e.g.*, AR 463 (noting a "psychotropic regimen that is ineffective"); AR 466 (describing that claimant was struggling with "basic self-care such as eating and drinking water," despite a medication regimen); AR 474 (noting that, despite over a year of medication, claimant reported his depression "getting worse and worse"). Additional cited facts do not contradict the notes or opinions of claimant's treating sources.

persuasive than other evidence in the record, the ALJ erred.  *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

Since the ALJ has not provided sufficient reasoning in support of his conclusion, I cannot adequately review the basis of his decision.  *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows us to perform our own review, because the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (internal quotations and citations removed).  And since adequate judicial review is impossible, I must remand.

## IV.     CONCLUSION AND ORDER

I need not reach the other issues raised by claimant.  For the reasons stated in this opinion, I remand this case for further consideration by the Social Security Administration.  I hereby order that:

1. Claimant's motion for summary judgment, ECF No. 16, be granted;
2. the Commissioner's cross-motion for summary judgment, ECF No. 17, be denied;
3. the decision of the Commissioner of Social Security be reversed, and the case remanded for further proceedings; and
4. the clerk of this court enter judgment in favor of claimant Saad Aljoher and against defendant Commissioner of Social Security, and close this case.

IT IS SO ORDERED.

Dated:    March 11, 2021

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE